No. 23-2326

---

UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

---

L.H., et al.,

Plaintiffs-Appellants,

v.

Independence School District,

Defendant-Appellee.

---

Appeal from the United States District Court
for the Western District of Missouri

---

**Appellants' Brief**

---

Anthony Rothert
Kristin Mulvey
ACLU of Missouri Fndn
906 Olive Street
Suite 1130
St. Louis, MO 63101
Phone: 314-652-3114
Fax: 314-652-3112
arothert@aclu-mo.org

Gillian R. Wilcox
ACLU of Missouri Fndn
406 W. 34th Street
Suite 420
Kansas City, MO 64111
Phone: 816-470-9938
Fax: 314-652-3112
gwilcox@aclu-mo.org

# SUMMARY OF THE CASE AND REQUEST FOR ORAL ARGUMENT

Four parents (the Parents) sued the Independence School District (the District) on behalf of their respective children, who attend the District's elementary, middle, and high schools. They challenge the District's policy of requiring every student's access to library materials be removed immediately and without notice upon receipt of a complaint. The automatic-removal policy applies at all grade levels and regardless of the basis of the complaint.

The Parents assert that the policy is unconstitutional because it deprives their children of their First Amendment right of access, as described in *Board of Education, Island Trees Union Free School District v. Pico*, 457 U.S. 853 (1982) (plurality opinion), and *Pratt v. Independent School District*, 670 F.2d 771, 779 (8th Cir. 1982), and does so without pre-deprivation notice or hearing. Moreover, regardless of the complaint's merits, access is revoked for any student for months while a review committee and the school board contemplate a final disposition.

Despite the enforcement of the written policy mere months before the lawsuit was filed, which would not have occurred had the policy been enjoined, the district court believed the Parents lacked standing. The court concluded that concerns about future enforcement are speculative and the harm to the Parents could not be redressed by prospective relief against the policy's enforcement.

Oral argument of 15 minutes would be appropriate.

i

# **TABLE OF CONTENTS**

SUMMARY OF THE CASE AND REQUEST FOR ORAL ARGUMENT ........... i

TABLE OF CONTENTS .......................................................................... ii

TABLE OF AUTHORITIES .................................................................. iii

JURISDICTIONAL STATEMENT ........................................................... v

STATEMENT OF THE ISSUES .............................................................. 2

STATEMENT OF THE CASE ................................................................. 3

     I.     Introduction ............................................................. 3
     II.    Background ............................................................... 4
     III.   Procedural History .................................................... 7

STANDARD OF REVIEW .................................................................... 9

SUMMARY OF THE ARGUMENT ........................................................ 10

ARGUMENT ...................................................................................... 12

     I.     The Parents have standing to seek a permanent injunction against the District's automatic book removal policy. ................................................... 12

         A. The district court erred in determining that the Parents' injury was too speculative because the removal of any book without reason or notice will necessarily injure their First Amendment right of access to library books and Fourteenth Amendment due process rights. . 13

         B. The District's automatic book removal policy is the direct source of the Parents' injuries, meaning their injuries are fairly traceable to the District's conduct. ............................................................... 18

         C. Enjoining the District's automatic book removal policy is likely to redress the Parents' injuries for purposes of Article III standing by preventing the automatic removal policy from causing them to be deprived of access without notice or the opportunity to be heard. 20

CONCLUSION .................................................................................... 25

CERTIFICATE OF COMPLIANCE ........................................................ 26

CERTIFICATE OF SERVICE ................................................................ 27

Appellate Case: 23-2326    Page: 3    Date Filed: 10/04/2023 Entry ID: 5323070

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*281 Care Comm. v. Arneson*,
  638 F.3d 621 (8th Cir. 2011) ............................................................... 22
*303 Creative LLC v. Elenis*,
  143 S. Ct. 2298 (2023) ............................................................... 15, 17
*Allen v. Wright*,
  468 U.S. 737 (1984) ............................................................... 21
*Bennett v. Spear*,
  520 U.S. 154 (1997) ............................................................... 2, 18
*Bd. of Educ., Island Trees Union Free Sch. Dist. v. Pico*,
  457 U.S. 853 (1982) ............................................................... i, 17
*Braden v. Wal-Mart Stores, Inc.*,
  588 F.3d 585 (8th Cir. 2009) ............................................................... 14
*California v. Texas*,
  141 S. Ct. 2104 (2021) ............................................................... 19, 21
*Church of Scientology of Cal. v. United States*,
  506 U.S. 9 (1992) ............................................................... 21
*Collins v. Yellen*,
  141 S.Ct. 1761 (2021) ............................................................... 19
*Elrod v. Burns*,
  427 U.S. 347 (1976) ............................................................... 17
*Federal Election Commission v. Cruz*,
  142 S. Ct. 1638 (2022) ............................................................... 2, 12, 19
*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
  561 U.S. 477 (2010) ............................................................... 21
*Hughes v. City of Cedar Rapids*,
  840 F.3d 987 (8th Cir. 2016) ............................................................... 2, 16
*In re SuperValu, Inc.*,
  870 F.3d 763 (8th Cir. 2017) ............................................................... 18
*Iowa League of Cities v. E.P.A.*,
  711 F.3d 844 (8th Cir. 2013) ............................................................... 23
*Johnson v. Minn. Park & Recreation Bd.*,
  729 F.3d 1094 (8th Cir. 2013) ............................................................... 18
*Larson v. Valente*,
  456 U.S. 228 (1982) ............................................................... 21

Appellate Case: 23-2326    Page: 4    Date Filed: 10/04/2023 Entry ID: 5323070

*Linda R.S. v. Richard D.*,
   410 U.S. 614 (1973) ........................................................................ 22

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ................................................................... Passim

*Majors v. Abell*,
   317 F.3d 719 (7th Cir. 2003) ........................................................ 17

*Marcus v. Iowa Pub. Television*,
   97 F.3d 1137 (8th Cir. 1996) ........................................................ 17

*Massachusetts v. E.P.A*,
   549 U.S. 497 (2007) .................................................................. 2, 22

*Minn. Citizens Concerned for Life v. Fed. Election Comm'n*,
   113 F.3d 129 (8th Cir. 1997) ........................................................ 21

*Noem v. Haaland*,
   41 F.4th 1013 (8th Cir. 2022) ...................................................... 18

*Pratt v. Independent School District*,
   670 F.2d 771 (8th Cir. 1982) ..................................................... i, 17

*Rodgers v. Bryant*,
   942 F.3d 451 (8th Cir. 2019) ........................................................ 12

*Spokeo Inc. v. Robbins*,
   136 S. Ct. 1540 (2016) ................................................................... 12

*St. Paul Area Chamber of Com. v. Gaertner*,
   439 F.3d 481 (8th Cir. 2006) ........................................................ 17

*Steel Co. v. Citizens for a Better Env't*,
   523 U.S. 83 (1998) ......................................................................... 12

*Susan B. Anthony List v. Driehaus*,
   573 U.S. 149 (2014) ....................................................... 13, 15, 17

*Turtle Island Foods, SPC v. Thompson*,
   992 F.3d 694 (8th Cir. 2021) ........................................................ 14

*Tyler v. Hennepin Cnty.*,
   143 S. Ct. 1369 (2023) ..................................................................... 9

*Uzuegbunam v. Preczewski*,
   141 S. Ct. 792 (2021) .................................................................... .20

*Wieland v. U.S. Dep't of Health and Hum. Servs.*,
   793 F.3d 949 (8th Cir. 2015) .......................................................... 9

*Young Am. Corp. v. Affiliated Comput. Servs. (ACS), Inc.*,
   424 F.3d 840 (8th Cir. 2005) .......................................................... 9

iv

## Statutes

28 U.S.C. § 1291 ............................................................................................... 1
28 U.S.C. § 1331 ............................................................................................... 1
28 U.S.C. § 1343(a)(3) ...................................................................................... 1
42 U.S.C. § 1983 ............................................................................................... 1

## Other Authorities

33 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 8342
   (2d ed. 2023) ............................................................................................ 22
*American Library Association Releases Preliminary Data on 2023 Book
   Challenges*, American Library Association (Sept. 19, 2023),
   https://www.ala.org/news/press-releases/2023/09/american-library-association-
   releases-preliminary-data-2023-book-
   challenges..................................................................................................16
Parker Leipzig, *Requests to Ban Books Hit a 21 Year High. See Which Titles Were
   the Most Challenged*, CNN (Aug. 27, 2023, 4:00 PM EDT),
   https://www.cnn.com/2023/08/27/us/school-library-book-ban-increase-
   dg/index.html.......................................................................................15, 16

Appellate Case: 23-2326     Page: 6     Date Filed: 10/04/2023 Entry ID: 5323070

## <u>JURISDICTIONAL STATEMENT</u>

In the district court, jurisdiction over the Parents' First and Fourteenth Amendment claims, arising under the Constitution of the United States and 42 U.S.C. § 1983, was authorized by 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3).

This Court has jurisdiction over the Parents' appeal from the district court's final judgment under 28 U.S.C. § 1291. The district court entered judgment on May 1, 2023. App. 222; R. Doc. 43, at 1. They filed their notice of appeal on May 26, 2023. App. 223; R. Doc. 48, at 1.

Appellate Case: 23-2326    Page: 7    Date Filed: 10/04/2023 Entry ID: 5323070

## STATEMENT OF THE ISSUES

Whether parents of students have standing to challenge, as violating their free speech and due process rights, a school district's written, recently enforced policy of automatically and immediately removing all access by every student to library materials upon a complaint lodged against continued inclusion in the school library's collection of any particular material

  *Federal Election Commission v. Cruz*, 142 S. Ct. 1638 (2022)

  *Massachusetts v. Environmental Protection Agency*,

    549 U.S. 497, 526 (2007)

  *Bennett v. Spear*, 520 U.S. 154 (1997)

  *Hughes v. City of Cedar Rapids*, 840 F.3d 987 (8th Cir. 2016)

Appellate Case: 23-2326  Page: 8  Date Filed: 10/04/2023 Entry ID: 5323070

## STATEMENT OF THE CASE

### I.      Introduction

There was a war in the Wengrod home.

Although they are twins, Max and Min Wengrod have always been different. Max hates school, preferring to spend time playing games and being online; Min is a strong student who loves to read and build robots. Their interests collide as Min prepares for the Battle of the Bots competition while Max brings home two kittens he rescued. They knew nothing of the hostilities between cats—led by Chairman Meow—and robots—following Robot AA-101. For the Grand Feline Empire and the Robot Federation too have been at war as they both strive to secure for themselves the Singularity Chip, with which cats can live beyond their nine lives and robots can achieve eternal battery life. The troops leave their respective planets—i.e., Planet Felinus and Planet Binary—to converge for an epic battle on Planet Earth, home of the humans.

Can cats and robots ever get along? Can Max and Min? These are the pressing questions posed by *Cats vs. Robots: This is War*, a novel written at the fifth-and-sixth-grade reading level by Margaret Stohl and Lewis Peterson. *See* Margaret Stohl & Lewis Peterson, *Cats vs. Robots: This is War* (2018).[1]

---

[1] *Cats vs. Robots* is a work of fiction. Cats do not speak in English, Robots lack self-awareness, and there is no evidence of a Singularity Chip.

Through enforcement of the Independence School District's written policy – Board Regulations 6310 and 6241, App. 24; R. Doc. 1-2, at 3; App. 27-30; R. Doc. 1-5, at 1-3—*Cats vs. Robots* was immediately removed from the shelves of the District's school library upon the demand of a single parent. App. 75; R. Doc. 8-5, at 1. That parent challenged the book on April 25, 2022. *Id*.[2] No notice was provided to students or parents, nor any hearing provided, before the novel was made inaccessible—even with parental authorization—to all students in the District. Thus, no Parent had the opportunity to oppose the removal of access for their child before it occurred.[3]

## II. Background

Careful consideration is given before the District includes any book in its library collection. The District entrusts a librarian with "a thorough knowledge of

---

[2] The challenge to the 307-page book was based on three pages introducing a character, Cousin Javi. Stohl, *supra* at 56-59. Javi, who aspires to be a judge, was non-binary and "preferred the term 'they' and 'them[,]' [w]hich could get a little confusing, especially for older folks." *Id*. at 59.

[3] The Parents' free speech and due process challenge is limited to Board Regulation 6241.4, mandating that "[m]edia being questioned will be removed from use, pending committee study and final action by the Board of Education[.]" App. 27; R. Doc. 1-5, at 1. On June 6, 2022, the Challenged Materials Review Committee reported its 6-3 vote that *Cats vs. Robots* be permanently excluded from the District's libraries. App. 80; R. Doc. 8-5, at 6. On June 14, the School Board voted 6 to 1 to permanently ban the book, but from elementary school libraries only. App. 94; R. Doc. 8-9, at 12.

4

the curriculum, the strengths and weaknesses of the current collection, and an understanding of the students' abilities and skills" to consider widely recognized selection criteria, based on the American Library Association's Library Bill of Rights, to determine whether a book is "educational and enjoyable" and appropriate for "recreational reading." App. 22; R. Doc. 1-2, at 1; *see also* App. 25; R. Doc. 1-3, at 1 ("The library/media program serves as a point of access to information and ideas for students as they acquire critical thinking and problem-solving skills"); App. 26; R. Doc. 1-4, at 1 ("Every effort will be made to provide materials that present all points of view concerning international, national and local problems and issues of our times").

Despite this deliberate selection process, the District departs from usual school library practices by mandating the automatic, immediate removal of any material about which any parent, student, or guardian complains—regardless of the reason. This unchecked removal is required across all schools and grade levels. The only stated standard for removal is that an individual complains that they find the material "objectionable in any manner." App. 24; R. Doc. 1-2, at 3. The District-provided complaint form merely asks, "To what part of the material do you object? Cite words, page numbers"; "Why do you object to this material?"; "Are you familiar with the range of materials used in the school system on this topic?; and "Do you approve of presenting a diversity of points of view about this material in

5

the classroom? *See, e.g.,* App. 75; R. Doc. 8-5, at 1. Upon a single complaint and regardless of the answers to the questions posed, the District's automatic-removal policy requires school officials to remove all electronic and hard copies of the material from circulation, thereby preventing all students from accessing the material. App. 27-30; R. Doc. 1-5, at 1-4.

Once a complaint is made and the challenged material is automatically removed from circulation, the Superintendent appoints a review committee. *Id.* The committee prepares a written recommendation; the Superintendent forwards the recommendation to the Board; and the Board votes. *Id.* Although there is a stated timeline in which the process must take place, in practice, the District has not complied with this timeline. *See* App. 75-82; R. Doc. 8-5, at 1-8. At no time are students or parents notified that any library material has been challenged and removed. The Board's ultimate decision is standardless and not beholden to the review committee's recommendation. No appeal process exists.

The Parents' children are students in the District's elementary, middle, and high schools who have used, and plan to continue to use, the libraries at their schools. App. 102-04; R. Doc. 8-7, at 1-3; App. 105-07; R. Doc. 8-8, at 1-3; App. 108-110; R. Doc. 8-9, at 1-3; App. 111-13; R. Doc. 8-10, at 1-3. Enforcement of the policy has occurred recently. Moreover, the District has not disavowed the policy; to the contrary, it defends the policy on its merits. App. 166-75; R. Doc. 19, at 8-17;

6

App. 78; R. Doc. 8-5, at 4 (commenting, "this most likely wo[n]'t be the only book review[ed]").

## III. Procedural History

On December 6, 2022, the Parents filed an action for prospective relief against the automatic removal policy. App. 18-19; R. Doc. 1, at 12-13. They asserted that removing access to approved library materials without notice or the opportunity to be heard violates the Free Speech Clause of the First Amendment and the Due Process Clause of the Fourteenth Amendment. App. 7-20; R. Doc. 1, at 1-14. The free speech claim faults the policy for requiring the removal of access to library materials based on meritless and viewpoint- or content-based complaints. The due process objection confronts the elimination of access without notice or an opportunity to be heard.

The District moved to dismiss on December 28, 2022, alleging (1) The Parents lack standing because they had not been judicially appointed to serve as their minor children's representatives, (2) Their "claims are speculative and based upon some hypothetical challenge to a book in the future," and, therefore, there is no justiciable controversy, and (3) They failed to state a claim upon which relief could be granted. App. 154-56; R. Doc. 18, at 1-3.

Appellate Case: 23-2326    Page: 13    Date Filed: 10/04/2023 Entry ID: 5323070

The district court granted the District's motion and entered judgment dismissing the suit. App. 216-21; R. Doc. 42, at 1-6; App. 222; R. Doc. 43, at 1.[4] The court found the Parents "fail[ed] to demonstrate the requisite element of an injury-in-fact." App. 220; R. Doc. 42, at 5. In the court's view, the Parents "h[ad] not alleged they sustained, and do not allege they are 'in immediate danger of sustaining, a concrete and particularized harm that is actual or imminent, not conjectural or hypothetical.'" Thus, the court believed the Parents lacked Article III standing. *Id.* Additionally, the court found the Parents' "allegations fail[ed] to plead redressability" because, the court thought, "enjoining [the District] from enforcing its automatic-removal policy would not foreclose the possibility that materials would otherwise be removed or access to them restricted upon challenge at the independent discretion of District personnel pending review of some sort." App. 221 n.2; R. Doc. 42, at 6 n.2.

---

[4] The court previously found the Parents could proceed on behalf of their minor children, and, in any event, the issue was moot since the Parents had been judicially appointed as next of friend of their minor children. App. 220; R. Doc. 42, at 5.

## STANDARD OF REVIEW

The district court's dismissal of the Parents' claims for lack of standing is reviewed *de novo*. *Wieland v. U.S. Dep't of Health and Hum. Servs.*, 793 F.3d 949, 953 (8th Cir. 2015). "In assessing whether the plaintiff has alleged a sufficiently particularized and concrete injury, the court must accept all factual allegations in the complaint as true and draw all inferences in the plaintiff's favor." *Young Am. Corp. v. Affiliated Comput. Servs. (ACS), Inc.*, 424 F.3d 840 (8th Cir. 2005) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). Courts must embrace general factual allegations that "are necessary to support the claim." *Wieland*, 793 F.3d at 954. At this stage of litigation, the Parents "need not definitively prove" their injuries. *Tyler v. Hennepin Cnty.*, 143 S. Ct. 1369, 1375 (2023).

Appellate Case: 23-2326    Page: 15    Date Filed: 10/04/2023 Entry ID: 5323070

## SUMMARY OF THE ARGUMENT

The Parents have standing to challenge the District's recently enforced, written policy that mandates automatic removal of access to any library book for which a complaint is received without pre-removal notice or opportunity to be heard. This district court misapplied the familiar standing requirements: an injury in fact that is fairly traceable to the challenged conduct of the defendant and that is likely to be redressed by the requested relief. *Lujan*, 504 U.S. at 560–61.

The district court mistakenly believed the Parents had not shown an injury in fact; however, they demonstrate two. First, the automatic denial of the right to access library materials upon the receipt of a complaint arguably implicates students' First Amendment right to access library materials. Second, the policy's requirement that the right to access be denied automatically and immediately upon receipt of a complaint without notice or the opportunity to be heard arguably infringes students' Fourteenth Amendment right to due process.

The district court premised its conclusion that the Parents had failed to demonstrate redressability on the erroneous notion that a plaintiff must demonstrate that the request relief must render the injury in fact impossible *for any reason*. To the contrary, a plaintiff need only show that the requested relief will prevent the injury from occurring because of the challenged policy. An injunction prohibiting enforcement of the policy requiring automatic removal of the right to

Appellate Case: 23-2326    Page: 16    Date Filed: 10/04/2023 Entry ID: 5323070

access a library material upon receipt of a complaint without notice or the opportunity to be heard will prevent *the policy they challenge* from once again automatically and without notice depriving students of the right to access a library material simply because a complaint was received.

Because the Parents alleged facts showing they had standing to challenge the automatic removal policy, the judgment dismissing their claims for lack of standard should be reversed.

Appellate Case: 23-2326    Page: 17    Date Filed: 10/04/2023 Entry ID: 5323070

# ARGUMENT

## I. The Parents have standing to seek a permanent injunction against the District's automatic book removal policy.

"The requisite elements of Article III standing are well established: A plaintiff must show (1) an injury in fact, (2) fairly traceable to the challenged conduct of the defendant, (3) that is likely to be redressed by the requested relief." *Fed. Election Comm'n v. Cruz*, 142 S. Ct. 1638, 1646 (2022) (citing *Lujan*, 504 U.S. at 560–61); *accord Rodgers v. Bryant*, 942 F.3d 451, 454 (8th Cir. 2019). This "triad" of elements "constitutes the core of Article III's case-or-controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103-04 (1998).

The Parents have standing to challenge the District's automatic book removal policy. It imminently threatens their First and Fourteenth Amendment rights. The District is committed to enforcing the policy in the future, so at any moment and without notice to students or parents, the Parents' children can be deprived of their ability to access materials and ideas currently available in their school library. *See Spokeo Inc. v. Robbins*, 136 S. Ct. 1540, 1549 (2016) (noting that intangible injuries such as free speech and free expression constitute injuries). These injuries are directly traceable to the District's adoption and enforcement of

Appellate Case: 23-2326     Page: 18     Date Filed: 10/04/2023 Entry ID: 5323070

the policy and would likely be redressed if Appellants obtained injunctive relief

preventing the District from enforcing the policy.[5]

**A. The district court erred in determining that the Parents' injury was too speculative because the removal of any book without reason or notice will necessarily injure their First Amendment right of access to library books and Fourteenth Amendment due process rights.**

The district court erroneously believed that The Parents' "alleged injuries

are hypothetical, speculative, and conjectural, rather than concrete, imminent, and

actual." App. 221; R. Doc. 42, at 6. This conclusion ignores that when a person's

First Amendment rights would be encroached upon by a policy, "enforcement

action is not a prerequisite to challenging [it]." *Susan B. Anthony List v. Driehaus*,

573 U.S. 149, 158 (2014). It naturally extends, therefore, that the Parents do not

[5] A recent decision of this Court supports the notion that the Parents have standing. *See Parents Defending Educ. v. Linn-Mar Cmty. Sch. Dist.*, No. 22-2927, slip op. at 8-10 (8th Cir. Sept. 29, 2023). First, their children intend to continue accessing materials in the school libraries, which is arguably affected by a constitutional interest. Second, their children's ability to access materials is arguably prescribed by the policy, which requires that the children's access automatically be denied without due process upon receipt of a complaint. Third, there is a credible threat the policy will again be enforced. Finally, the alleged injury—i.e., automatic denial of the right to access without due process upon receipt of a complaint—is fairly traceable to potential enforcement of the policy, which requires the automatic denial of access without due process upon receipt of a complaint, and a favorable decision—i.e., enjoining the policy requiring automatic denial of the right to access without due process upon receipt of a complaint—is likely to redress the injury by prohibiting the automatic denial of the right to access upon receipt of a complaint without due process.

have to wait until an individual files another complaint about another book, triggering the automatic removal policy once more, to challenge the policy. Indeed, requiring them to wait would cause them to suffer yet another deprivation of their First and Fourteenth Amendment rights because of the policy—having already experienced depravations with the *Cats vs. Robots* scenario—before challenging it. Such a requirement would be particularly misplaced here for the constitutional defect about which the Parents complain is that students and parents are given no notice that a library material has been challenged and, thus, automatically removed. The Parents have no way of knowing that a book has been automatically removed because the policy does not require notice before a book has been removed. Consequently, the Parents did not bear the burden to show that "any challenge is currently pending or that any such challenge has been threatened by a potential challenger." App. 221; R. Doc. 42, at 6.

Moreover, "[i]t is crucial . . . not to conflate Article III's requirement of injury in fact with a plaintiff's potential causes of action, for the concepts are not coextensive." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 591 (8th Cir. 2009). "Because the standing analysis and the substantive analysis are not coextensive," the Court uses "the First Amendment's lenient standing requirement." *See Turtle Island Foods, SPC v. Thompson*, 992 F.3d 694, 700 (8th Cir. 2021).

Appellate Case: 23-2326    Page: 20    Date Filed: 10/04/2023 Entry ID: 5323070

The Parents remain at risk of immediate future harm because the District's policy mandates that any library material will be removed upon the mere filing of a complaint. App. 27; R. Doc. 1-5, at 1; *see also Susan B. Anthony,* 573 U.S. at 152 (finding standing where statute allowed "any person" to file a complaint, increasing the risk of enforcement because of an enlarged "universe of potential complainants"). Parents are left in constant jeopardy and fear of losing their First Amendment rights, and they worry that books will continue to be removed for no reason other than someone disagreeing with their content. App. 102-04; R. Doc. 8-7, at 1-3; App. 105-07; R. Doc. 8-8, at 1-3; App. 108-110; R. Doc. 8-9, at 1-3; App. 111-13; R. Doc. 8-10, at 1-3; *see also 303 Creative LLC v. Elenis*, 143 S. Ct. 2298, 2308 (2023) (standing existed for plaintiff who had not yet expanded her graphic design business to include creating wedding websites but "worrie[d]" that by doing so she would become subject to the challenged law). In fact, the District has *conceded* that it will continue to enforce the policy in the future, as it has already done. App. 14-15; R. Doc. 1, at 8-9.

 Nor are the Parents' fears of additional enforcement of the automatic removal policy unwarranted. The American Library Association found that:

> [b]etween January 1 and August 31, 2023, ALA's Office for Intellectual Freedom (OIF) reported 695 attempts to censor library materials and services and documented challenges to 1,915 unique titles.[] The number of unique titles challenged has increased by 20 percent from the same reporting period in 2022, the year in which the highest number of book challenges occurred since ALA began compiling this data more than 20 years ago. Most

15

of the challenges were to books written by or about a person of color or a member of the LGBTQIA+ community.

*American Library Association Releases Preliminary Data on 2023 Book Challenges*, American Library Association (Sept. 19, 2023), https://www.ala.org/news/press-releases/2023/09/american-library-association-releases-preliminary-data-2023-book-challenges. In 2022, Missouri school districts received 32 reported requests to ban 173 books from their libraries. Parker Leipzig, *Requests to Ban Books Hit a 21 Year High. See Which Titles Were the Most Challenged*, CNN (Aug. 27, 2023, 4:00 PM EDT), https://www.cnn.com/2023/08/27/us/school-library-book-ban-increase-dg/index.html. Due to the American Library Association's dependence on librarians self-reporting book challenges, these numbers are likely only a sampling of the books challenged so far in 2023. *Id.*

Far from the court's assertion that the Parents' belief that the automatic removal policy will be enforced is "hypothetical, speculative, and conjectural," App. 221; R. Doc. 42, at 6, enforcement has already happened. App. 15; R. Doc. 1, at 9. Less than eight months before the Complaint was filed, a parent complained about *Cats vs. Robots* because a character identifies as non-binary and explains what that means to them. App. 14; R. Doc. 1, at 8. Upon this complaint, all students in the District were deprived of their First Amendment right to access the library material while the review was pending and deprived of their due process

16

right to notice and opportunity to be heard before the book was automatically removed. *See Hughes v. City of Cedar Rapids*, 840 F.3d 987, 994 (8th Cir. 2016) (finding allegations of inadequate procedure sufficient to establish Article III standing on a due process claim). A history of past enforcement constitutes "good evidence" that the likelihood of future enforcement will meet the "substantial risk" standard. *See Susan B. Anthony*, 573 U.S. at 164; *see also 303 Creative*, 143 S. Ct. at 2310 (finding credible threat of enforcement where Colorado had history of past enforcement and refused to disavow future enforcement). The previous enforcement here was fresh.

Yet, even if the District had never enforced its automatic removal policy, the Parents would still have standing. Standing for pre-enforcement challenges in the First Amendment context often follows from the mere presence of a challenged law. *See St. Paul Area Chamber of Com. v. Gaertner*, 439 F.3d 481, 487 (8th Cir. 2006) (noting that, in the context of pre-enforcement claims challenging statutes, "the threat [] is latent in the existence of the statute") (*quoting Majors v. Abell*, 317 F.3d 719, 721 (7th Cir. 2003)). When a book is automatically removed, students immediately lose their First Amendment right of access to the materials. *See Pico*, 457 U.S. 853 (1982) (plurality opinion); *Pratt v. Indep. Sch. Dist. No. 831, Forest Lake*, 670 F.2d 771, 779 (8th Cir. 1982). "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."

Appellate Case: 23-2326    Page: 23    Date Filed: 10/04/2023 Entry ID: 5323070

*Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion); *accord Marcus v. Iowa Pub. Television*, 97 F.3d 1137, 1141 (8th Cir. 1996); *Johnson v. Minn. Park & Recreation Bd.*, 729 F.3d 1094, 1101–02 (8th Cir. 2013).

For these reasons, the Parents satisfied the injury-in-fact standing requirement.

### B. The District's automatic book removal policy is the direct source of the Parents' injuries, meaning their injuries are fairly traceable to the District's conduct.

"An injury is fairly traceable if the plaintiff shows a causal connection between the injury and the conduct complained of that is not ... the result of the independent action of some third party not before the court." *In re SuperValu, Inc.*, 870 F.3d 763, 768 (8th Cir. 2017) (quoting *Lujan*, 504 U.S. at 560) (cleaned up). The Parents' burden to establish traceability is "relatively modest at this stage of the litigation." *Bennett v. Spear*, 520 U.S. 154, 171 (1997). Indeed, "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Id.* at 168; *see also In re SuperValu, Inc.*, 870 F.3d at 772 (holding plaintiff alleged a fairly traceable claim given the standard articulated in *Bennett*); *Noem v. Haaland*, 41 F.4th 1013, 1019 (8th Cir. 2022) (noting that traceability focuses only on the connection between the alleged unlawful conduct and the injury).

18

The District is responsible for the injuries alleged in this case. It created and is responsible for administering the automatic book removal policy. When someone complained about *Cats vs. Robots*, the District enforced its policy and immediately and without notice withdrew from every student in the District access to the book and its ideas. When an alleged injury occurs because of "the application or threatened application of an unlawful enactment," the traceability requirement is met. *Cruz*, 142 S. Ct. at 1647; *compare Collins v. Yellen*, 141 S.Ct. 1761, 1779 (2021) (finding traceability where Treasury Department's "adoption and implementation" of new amendment caused plaintiffs to suffer pocketbook injury); *with California v. Texas*, 141 S. Ct. 2104, 2114 (2021) (injury not "fairly traceable" to government conduct where statute provided no means of enforcement and plaintiffs had "not shown that any kind of Government action or conduct has caused or will cause the injury").

The Parents' free speech and due process injuries are fairly traceable to the District's automatic removal policy, which requires the actions that the Parents allege harm them.

Appellate Case: 23-2326    Page: 25    Date Filed: 10/04/2023 Entry ID: 5323070

**C. Enjoining the District's automatic book removal policy is likely to redress the Parents' injuries for purposes of Article III standing by preventing the automatic removal policy from causing them to be deprived of access without notice or the opportunity to be heard.**

An injunction prohibiting enforcement of the automatic removal policy will prevent future violations of the Parents' free speech and due process rights caused by the policy. That suffices to demonstrate that the requested relief will likely redress the injury caused by the policy. The district court's speculation that the same injury could be caused by different policies not challenged—i.e., those that permit *librarians* to weed no longer useful books from their collections—does not change this.

"Because redressability is an 'irreducible' component of standing, no federal court has jurisdiction to enter a judgment unless it provides a remedy that can redress the plaintiff's injury." *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 796 (2021) (citations omitted). Full redressability of the alleged injury is *not* the standard: "the ability 'to effectuate a partial remedy' satisfies the redressability requirement." *Id.* (quoting *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 13 (1992)).

The district court wrongfully concluded that, even if the Parents could demonstrate injury in fact and causation, they could not meet the redressability requirement. App. 221 n.2; R. Doc. 42, at 6 n.2. The court reasoned that

20

"[e]njoining [the District] from enforcing its automatic-removal policy would not foreclose the possibility that materials would otherwise be removed or access to them restricted upon challenge at the independent discretion of District personnel pending review of some sort." *Id.* This misconstrues the redressability requirement and the Parents' Complaint.

Article III "standing does not require precise proof of what the [Board's] policies might have been in that counterfactual world." *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 512 n.12 (2010); *California v. Texas,* 141 S. Ct. at 2115 ("To determine whether an injury is redressable, a court will consider the relationship between 'the judicial relief requested' and the 'injury' suffered.") (quoting *Allen v. Wright*, 468 U.S. 737, 753 n.19 (1984)). The Parents are not required to demonstrate that, if the injunction were granted, materials would not be removed for some reason other than enforcement of the policy requiring automatic removal upon receipt of a complaint. That the district court could imagine a hypothetical world in which the District removed books without notice under a *different policy* does not address whether the specific injury alleged in this instance would be redressable through the Parents' prayer for relief. "A party 'satisfies the redressability requirement when he shows that a favorable decision will relieve a discrete injury to himself.'" *Minn. Citizens Concerned for Life v. Fed. Election Comm'n*, 113 F.3d 129, 131 (8th Cir. 1997) (emphasis in

21

original) (quoting *Larson v. Valente*, 456 U.S. 228, 243 n.15 (1982) (plurality opinion)). "'He need not show that a favorable decision will relieve his *every* injury.'" *Id*. In other words, it is enough that the Parents showed that an injunction against the challenged policy would "redress a discrete portion of [their] alleged injury in fact." *281 Care Comm. v. Arneson*, 638 F.3d 621, 631 (8th Cir. 2011).

The district court also miscomprehended the Parents' concern leading to this suit. The Parents are *not* troubled by the fact that librarians might decide to remove a book from circulation. Indeed, they have not challenged the "Selection Criteria" or "Criteria for Materials to be Weeded" that allow *the librarian* to exercise control of what is included and maintained in the library collection. In addition to a librarian with the institutional knowledge and training to make such decisions, the policies provide criteria for weeding a library collection—unlike under the standardless, automatic removal policy. Thus, that a book might be removed at a librarian's behest based on stated conventions is not the Parents' objection.

This is not a case where there is a mismatch between the challenged policy and the relief requested. *See Linda R.S. v. Richard D.*, 410 U.S. 614, 618 (1973) (finding enforcement of penal code that criminalized failure of parent who did not support minor child would only lead to the imprisonment of the parent, not payment of child support). At a minimum, the requested relief in this case satisfies the "every-little-bit-helps" approach outlined in *Massachusetts v. E.P.A.*, 549 U.S.

Appellate Case: 23-2326     Page: 28     Date Filed: 10/04/2023 Entry ID: 5323070

497, 526 (2007). *See* 33 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 8342 (2d ed. 2023). There the Supreme Court acknowledged that new motor vehicles in the United States are just one of many sources of greenhouse gas emissions. *Id.* However, it is also true that "[a] reduction in domestic emissions would slow the pace of global emissions increases, no matter what happens elsewhere." *Id.*

Moreover, courts treat the redressability requirement permissively where a plaintiff seeks to vindicate procedural rights. *Id.* at 517-18; *id.* at 518 ("When a litigant is vested with a procedural right, that litigant has standing if there is some possibility that the requested relief will prompt the injury-causing party to reconsider the decision that allegedly harmed the litigant."); *see also Lujan*, 504 U.S. at 572 n.7 ("There is this much truth to the assertion that 'procedural rights' are special: The person who has been accorded a procedural right to protect his concrete interests can assert that right without meeting all the normal standards for redressability and immediacy."). When a party alleges deprivation of a right to notice, redressability "does not require petitioners to show that the [Board] would alter its rules upon following the proper procedures." *Iowa League of Cities v. E.P.A.*, 711 F.3d 844, 871 (8th Cir. 2013), enforced sub nom. *Iowa League of Cities v. E.P.A.*, No. 11-3412, 2021 WL 6102534 (8th Cir. 2021). Since the Parents allege that enforcement of the District's automatic removal policy violates their

23

procedural due process rights, App. 19; R. Doc. 1, at 13, enjoining the District from enforcing the policy, makes it more than merely speculative that the District would amend or abandon its current unconstitutional policy. Were the Parents to obtain injunctive relief prohibiting the District from enforcing the policy as is, or even partial relief enjoining the District from the policy without some procedural safeguards, such relief would meet the redressability standard.

The Parents, therefore, satisfy the redressability requirement for standing.

Appellate Case: 23-2326    Page: 30    Date Filed: 10/04/2023 Entry ID: 5323070

## CONCLUSION

The Parents demonstrated that the automatic removal policy without notice upon receipt of a complaint causes an injury in fact that is fairly traceable to the policy and that this injury is likely to be redressed by an injunction enjoining enforcement of the policy. Hence, the district court's judgment dismissing the Parents' complaint for lack of standing should be reversed and the case remanded for further proceedings.

Respectfully submitted,

*/s/*Anthony E. Rothert
Anthony E. Rothert
Kristin M. Mulvey
ACLU OF MISSOURI FOUNDATION
906 Olive Street, Suite 1130
St. Louis, MO 63101
(314) 652-3114

Gillian R. Wilcox
ACLU OF MISSOURI FOUNDATION
406 West 34th Street, Suite 420
Kansas City, MO 64111

*Counsel for Appellants*

Appellate Case: 23-2326    Page: 31    Date Filed: 10/04/2023 Entry ID: 5323070

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) because this brief contains 5,158 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Times New Roman 14-point font.

This brief and addendum have been scanned for viruses pursuant to Eighth Circuit Local Rule 28A(h)(2) and is virus-free.

/s/ Anthony E. Rothert

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the

Court for the United States Court of Appeals for the Eighth Circuit by using the

appellate CM/ECF system on. I certify that all participants in the case are

registered CM/ECF users and that service will be accomplished by the appellate

CM/ECF system. In addition, paper copies the brief will be mailed to the Court and

opposing counsel upon acceptance of the brief by this Court.

*/s/* Anthony E. Rothert

Appellate Case: 23-2326   Page: 33   Date Filed: 10/04/2023 Entry ID: 5323070